UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAQUAN DAVIS,

       Plaintiff,

v.

DANA NESSEL, JAMES F. GRADY
II, and KIM WORTHY,

       Defendants.

_____/

Case No.  2:25-cv-13078
District Judge Terrence G. Berg
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTIONS TO DISMISS (ECF Nos. 16, 18)
AND
DENY PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION
(ECF No. 26)**[1]

I.     Introduction

This is a civil rights case under 42 U.S.C. § 1983.  Plaintiff Jaquan Davis,

proceeding *pro se*, is suing Michigan Attorney General Dana Nessel, Director of

the Michigan State Police James F. Grady II, and Wayne County Prosecutor Kim

Worthy, alleging a violation of his procedural due process rights arising out of his

classification as a sex offender under Michigan's Sex Offender Registration Act

_____

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

(SORA).  (ECF No. 1).  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned.  (ECF No. 24).

Before the Court are motions to dismiss filed by Nessel and Grady (ECF No. 16) and Worthy (ECF No. 18).  Davis has responded to both motions (ECF Nos. 20, 21) and Nessel and Grady have replied (ECF No. 23).  Also before the Court is an emergency motion for a temporary restraining order and/or preliminary injunction filed by Davis (ECF No. 26), to which all defendants have responded (ECF No. 28, 29).  For the reasons discussed below, the undersigned RECOMMENDS that defendants' motions to dismiss be GRANTED and Davis's motion for a TRO/preliminary injunction be DENIED.  If this recommendation is adopted, the case would be closed.

## II.    Background

Davis filed his complaint on September 30, 2025.  (ECF No. 1).  In it, he says that in 2016, he was convicted in the United States District Court for the Eastern District of Michigan for aiding and abetting transportation for prostitution in violation of 18 U.S.C. §§ 2421, 2422.  (*Id.*, PageID.2).  He says that he completed his sentence and term of supervised release in July 2025.  (*Id.*).  However, "[d]espite the federal nature of the conviction, [Michigan State Police] classified [him] under SORA without notice, a hearing, or opportunity to contest equivalency."  (*Id.*).  He alleges that he "attempted to petition Wayne County

2

Circuit Court under MCL 28.728c but was repeatedly denied access: clerks rejected filings, and the Prosecutor's Office returned the petition with only a handwritten note stating 'this don't belong to our office you have to submit this to federal court.'" (*Id.*, PageID.2-3).  He says that "[f]ederal courts do not adjudicate individual SORA petitions, leaving [him] without any process to challenge his registration." (*Id.*, PageID.3).  He alleges that defendants have violated his procedural due process rights under the Fourteenth Amendment.  (*Id.*).

### III.    Legal Standards

### A.    Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or for judgment on the pleadings under Rule 12(c), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012); *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of

action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even in pleadings drafted by *pro se* parties, "courts should not have to guess at the nature of the claim asserted."  *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him…. [N]either may the Court 'conjure up unpled allegations.'"  *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009).

B.      TRO/Preliminary Injunction

Courts in the Sixth Circuit apply the same standard to a motion for a TRO and a motion for a preliminary injunction.  *Summit Cnty. Democratic Cent. &*

*Executive Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004).  In considering a motion for a preliminary injunction, the Court must weigh the following factors: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a preliminary injunction, (3) whether granting the preliminary injunction would cause substantial harm to others, and (4) whether the public interest would be served by granting the preliminary injunction.  *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).

According to the Sixth Circuit, these "are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).  No one single factor is controlling; however, "a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." *Mich. State v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).  "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion because a preliminary injunction is an extraordinary remedy." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citation omitted).  "The party seeking the preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success." *Id.* (citing *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 441 (1974)).

IV.    Defendants' Motions to Dismiss

Defendants argue that Davis's claims should be dismissed because 1) the statute of limitations has lapsed on his claims; 2) he was a member of a mandatory class where the questions of declaratory and injunctive relief are the same as here; and 3) he fails to state a claim under the Fourteenth Amendment.  *See* ECF Nos. 16, 18.  In addition, Nessel and Grady argue that the Eleventh Amendment bars Davis's official capacity claims against them and that they are entitled to qualified immunity.  (ECF No. 16).  Each of these arguments will be discussed below.

A.    Statute of Limitations

Defendants argue that Davis's procedural due process claim is barred by the statute of limitations.  The statute of limitations for claims under 42 U.S.C. § 1983 is established with reference to the statute of limitations for personal injury claims in the state where the case arises.  *Wilson v. Garcia*, 471 U.S. 261, 272 (1985).  In Michigan, the statute of limitations for personal injury claims is three years.  *See* M.C.L. § 600.5805(10).  Thus, Davis's claims are subject to a three-year statute of limitations.  "Under federal law the statute begins to run when plaintiffs knew or should have known of the injury which forms the basis of their claims."  *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001).

In his complaint, Davis alleges that he was convicted in 2016 and that Michigan State Police then classified him as a sex offender under SORA "without

6

notice, a hearing, or opportunity to contest equivalency." (ECF No. 1, PageID.2).

Davis argues that his claim is timely because he alleges ongoing enforcement and

"repeated denial of any forum to challenge registration throughout 2025." (ECF

No. 21, PageID.113). However, Davis's claim for violation of procedural due

process is based on the *original imposition of SORA's requirements* rather than any

associated future consequences; he specifically challenges the initial imposition of

the requirements without notice or a hearing and requests that defendants be

enjoined until he has received a hearing. As such, because his conviction occurred

in 2016 and his complaint was not filed until 2025—9 years later—his claim is

barred by the statute of limitations. *See Doe v. Rausch*, No. 3:20-CV-00728, 2022

WL 481240, at *3 (M.D. Tenn. Feb. 16, 2022) ("Count II, however, is directed at

the original imposition of SORA's requirements on Plaintiff rather than at the

ongoing effects of the statutory scheme. Count II pleads that the Act's retroactive

application deprives Plaintiff of due process, which occurred at the time the

challenged requirements were initially imposed. Accordingly, Count II will be

dismissed as untimely."). His claims should therefore be dismissed as untimely.

Nevertheless, defendants' additional arguments will be briefly considered for the

sake of completeness.

B.      Res Judicata

7

Defendants argue that the Court cannot grant injunctive or declaratory relief to Davis because he is a member of a class in a lawsuit challenging Michigan's current sex offender registry law. *See Does v. Whitmer*, 751 F. Supp. 3d 761, 819 (E.D. Mich. 2024) ("*Does III*"). Davis argues that this does not bar his claims because he seeks compensatory damages and there have been continued enforcement actions. (ECF Nos. 20, 21).

As a preliminary matter, it is again important to note that Davis's claims revolve entirely around the initial process of his registration; he brings only one claim for violation of procedural due process and he seeks a declaration that defendants' application of SORA to him without a hearing violated the Due Process Clause and asks that defendants be enjoined from continuing to require him to register absent constitutionally sufficient process. For these requests of injunctive and declaratory relief, defendants are correct that Davis's claims are barred by res judicata. "Under the doctrine of res judicata, a final judgment on the merits is an absolute bar to a subsequent action between the same parties or their privies based upon the same claims or causes of action." *Bean v. Sundquist*, 22 F. App'x 492, 494 (6th Cir. 2001).

In *Does III*, a group of plaintiffs who were registered as sex offenders brought a § 1983 class action suit against Governor Gretchen Whitmer and Grady in their official capacities challenging the constitutionality of Michigan's SORA

8

and requesting declaratory and injunctive relief for various constitutional violations, including violations of procedural due process.  *Does III*, 751 F.Supp.3d at 774-775.  The primary class was defined as "people who are or will be subject to registration under Michigan's SORA," and it included seven subclasses, including a subclass for those convicted after 2011.  *Id.* at 783.  The class was certified on September 11, 2018—after Davis had been convicted—under Fed. R. Civ. P. 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so the final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Under Rule 23(b)(2), Davis could not opt out as a member of the class.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).  One of the claims in that case was that Michigan State Police registering individuals with non-Michigan convictions under SORA without notice or an opportunity to be heard violated the plaintiffs' procedural due process rights.  *Doe III*, 751 F.Supp.3d at 819.

Davis now attempts to bring the same claim, for which a final decision on the merits was actually litigated and decided in *Doe III*, against essentially the same parties.  *See Pittman v. Michigan Corrs. Org.*, 123 F. App'x 637, 640 (6th Cir. 2005) ("A government official sued in his or her official capacity is considered to be in privity with the government.  Therefore a prior judgment involving the government will bar an action against individual officers of the government in their

official capacity for the same claim." (citation omitted)); *Crawford v. Lapeer Cnty. Prosecutor*, No. 302836, 2012 WL 1060631, at \*1 (Mich. Ct. App. Mar. 29, 2012) ("County prosecuting attorneys, when prosecuting individuals for violations of state law, are considered state officials for § 1983 purposes…."). Davis's claims for declaratory and injunctive relief against defendants in their official capacities are therefore barred by res judicata.

As for his claims against them in their individual capacities, strict claim preclusion does not necessarily apply, but as will be discussed further below, Davis "has not presented sufficient evidence that actions by these parties in their non-official capacities would raise a colorable § 1983 claim." *Pittman*, 123 F. App'x at 641.

### C.   Failure to State a Claim

Defendants next argue that Davis has failed to state a claim under the Fourteenth Amendment. A claim for a violation of procedural due process under the Fourteenth Amendment must allege that the State has interfered with a liberty or property interest and that the procedures attendant upon that deprivation were constitutionally insufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In the context of § 1983 claims, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v Iqbal*, 556 U.S. 662, 676 (2009); *Murphy v.*

10

*Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.").

Here, Davis has not pled how Nessel, Grady, or Worthy were personally involved in the deprivation of his rights such that he should be allowed to maintain claims against them.[2]  Against Grady, the only thing that Davis alleges is that "MSP classified Plaintiff under SORA," and against Worthy, he says only that "the Prosecutor's Office returned [his] petition with only a handwritten note stating 'this don't belong to our office you have to submit this to federal court.'"  (ECF No. 1, PageID.2).  Nessel is not mentioned in Davis's allegations.  As these bare allegations do not allege that any defendant was personally involved in the deprivation of Davis's due process rights, his claims against them should be dismissed.

### D.    Eleventh Amendment Immunity

Nessel and Grady also argue that Davis's claims against them in their official capacities are barred by the Eleventh Amendment.  (ECF No. 16,

---

[2] Nessel and Grady also argue that Davis's "conviction under 18 U.S.C. § 2421a triggers mandatory registration under the Federal Sex Offender Registration and Notification Act (SORNA), 34 U.S.C. § 20901, et seq." which subsequently triggers mandatory registration requirements under Michigan law.  (ECF No. 16, PageID.78).  They argue that therefore, "even if the Court were to find that Michigan's SORA provisions do not afford Davis due process, Davis would remain under Federal SORNA's and Michigan's SORA's registration obligations." (*Id.*).  However, resolution of this argument is unnecessary given the overall recommendation that Davis's claims be dismissed for various other reasons.

PageID.68).  In his complaint, Davis brings claims for monetary damages, as well as declaratory and injunctive relief against Nessel and Grady in their official capacities.

The Eleventh Amendment applies to suits brought against a state by one of its own citizens, *Ex Parte Young*, 209 U.S. 123 (1908), barring "§ 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages." *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009).  The State of Michigan has not consented to civil rights suits in federal court. *Abick v. State of Mich.*, 803 F.2d 874, 877 (6th Cir. 1986).  A lawsuit against individuals in their official capacities for money damages is considered a suit against the State and allows defendants to invoke sovereign immunity under the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-37 (6th Cir. 1994).  However, despite the sovereign immunity afforded by the Eleventh Amendment, "federal courts [may] enjoin state officers in their official capacity from prospectively violating a federal statute or the Constitution." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014).  "[T]he Eleventh Amendment does not preclude a suit against [state officers] for prospective injunctive relief." *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012) (citing *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000)); *see also Ex Parte Young*, 209 U.S. 123, 129.

Under the Eleventh Amendment, Nessel and Grady are entitled to immunity

from Davis's claims for money damages against them in their official capacities.

Further, Nessel and Grady argue that "[t]hough Davis is arguably also seeking an

injunction, he fails to allege an ongoing violation of federal law by either Nessel or

Grady," and therefore sovereign immunity bars his claims for injunctive relief.

The undersigned agrees. As discussed above, although Davis alleges "continuing

violations" and requests the Court to enjoin defendants, his claim is based entirely

on the initial process, or lack thereof, that he received upon his registration. Nessel

and Grady are therefore entitled to immunity from Davis's claims against them in

their official capacities.

### E. Qualified Immunity

#### 1. Standard

Qualified immunity shields government officials performing discretionary

functions "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Created to

protect government officials from interference with their official duties, qualified

immunity "is an immunity from suit rather than a mere defense to liability."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room

to make reasonable but mistaken judgments and protects all but the plainly

13

incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation modified). After a defending official initially raises qualified immunity, the plaintiff bears the burden of showing that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d at 472.

In considering qualified immunity, the Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident." *Id.* The steps may be considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

### 2. Analysis

Nessel and Grady argue that they are entitled to qualified immunity. As explained above, Davis has failed to allege that either defendant was personally involved in the deprivation of his rights and therefore has failed to state a claim against them. Therefore, Nessel and Grady are entitled to qualified immunity, as "no constitutional violation has occurred." *Kinlin*, 749 F.3d at 577.

### V. Davis's Motion for TRO/Preliminary Injunction

14

Davis has also filed a motion for a TRO or preliminary injunction, explaining that he remains subject to SORA enforcement and requesting that the Court enjoin defendants from enforcing SORA requirements against him absent a judicial determination.  However, as discussed above, Davis's claims should be dismissed, and a preliminary injunction cannot be issued where there is no likelihood of success on the merits.  *See Mich. State v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).  For that reason, Davis's motion should be denied.

## VI.    Conclusion

For the reasons discussed above, the undersigned RECOMMENDS that defendants' motions to dismiss (ECF Nos. 16, 18) be GRANTED, and Davis's motion for a TRO/preliminary injunction (ECF No. 26) be DENIED.  If this recommendation is adopted, the case would be closed.

Dated: June 3, 2026                                  s/Kimberly G. Altman
Detroit, Michigan                                    KIMBERLY G. ALTMAN
                                                     United States Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

15

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 3, 2026.

s/Dru Jennings
DRU JENNINGS
Case Manager

17